The document below is hereby signed.

Signed: December 23, 2009.



```
_____
S. Martin Teel, Jr.
United States Bankruptcy Judge
```

```
         UNITED STATES BANKRUPTCY COURT
          FOR THE DISTRICT OF COLUMBIA
```

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| OLGA E. ROEMER, | ) | Case No. 08-00686 |
| | ) | (Chapter 13) |
| Debtor. | ) | **For Publication in West's** |
| | ) | **Bankruptcy Reporter** |

MEMORANDUM DECISION AND ORDER

The debtor has sought a ruling that her plan may treat the claim of U.S. Bank secured by the debtor's condominium as secured only to the extent of the value of that property. For the reasons set forth below, I will grant summary judgment in favor of the debtor.

I

The material facts not in genuine dispute are as follows. In May 2006, the debtor purchased a condominium, financed by Wells Fargo Bank and secured by a purchase money deed of trust. Subsequently, Wells Fargo properly assigned the deed of trust to U.S. Bank and remained as servicing agent. In relevant part, the deed of trust provided that:

> BORROWER shall occupy, establish, and use the Property as
> Borrower's principal residence within 60 days after the

> execution of this Security Instrument **and shall continue to occupy the Property as the Borrower's principal residence for at least one year after the date of the occupancy**, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

[Emphasis added.] In 2008, the debtor encountered financial difficulties and listed the property for sale. Thereafter, the debtor obtained an offer, which would have constituted a short sale (meaning a sale that would not generate enough proceeds to pay off U.S. Bank's claim). In anticipation of the sale, the debtor rented a new apartment and vacated the residence. Debtor then placed the condominium on the rental waiting list.[1] The debtor asserts that the condominium was still vacant on October 20, 2008, the date she commenced this chapter 13 case. That same day, La Femme DC, Inc., a corporation solely owned by the debtor, filed a Combined Declaration of Use and Incontestability with the United States Patent and Trademark office, listing the condominium as its proposed address.

II

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ.

---

[1] The debtor's condominium bylaws restrict the amount of units in the building that can be rented out at any time.

2

P. 56 (c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Whether any disputed issue of fact exists is for the court to determine. *Balderman v. United States Veterans Admin.*, 870 F. 2d 57, 60 (2d Cir. 1989). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F. 3d 105, 114 (2d Cir. 1998). Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson*, 477 U.S. at 248.

III

Section 1322(b)(2) of the Bankruptcy Code provides, in relevant part, that a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence."  In *Nobelman v. American Savings Bank*, 508 U.S. 324 (1993), the Court interpreted this provision to preclude bifurcation under a plan of an undersecured mortgage on a debtor's principal residence into secured and unsecured portions.  In so doing, the Court prevented the debtor from reducing a lien on her principal residence to the fair-market value of the property.  The only issue before this court is whether the debtor's condominium qualifies as her principal residence for purposes of § 1322(b)(2).  Material in this respect is when is the appropriate time for evaluating whether the property was the debtor's principal residence.

A.

Although an issue of first impression for this court, other courts addressing when is the appropriate time for determining principal residence for purposes of § 1322 fall in to one of three schools of thought.  The first set of courts, relying on the plain language of § 1322, holds that the petition date is the relevant time.  *See Wells Fargo Bank, N.A. v. Jordan (In re Jordan)*, 330 B.R. 857 (Bankr. M.D. Ga. 2004); *In re Howard*, 220

4

B.R. 716 (Bankr. S.D. Ga. 1998); *In re Lebrun*, 185 B.R. 665 (Bankr. D. Mass. 1995); *In re Wetherbee*, 164 B.R. 212 (Bankr. D.N.H. 1994); *In re Churchill*, 150 B.R. 288 (Bankr. D. Maine 1993); *In re Dinsmore*, 141 B.R. 499 (Bankr. W.D. Mich. 1992). These courts rely on the use of the word "is" in the statute, a present tense verb. *See, e.g.*, *In re Churchill*, 150 B.R. at 289.

The second set of courts, relying on the legislative history of § 1322, holds that the loan origination date is the relevant date for determining principal residence. *See In re Smart*, 214 B.R. 63 (Bankr. D. Conn. 1997); *see also In re Bulson*, 327 B.R. 830 (Bankr. W.D. Mich. 2005) (dictum). These courts rely on Justice Steven's concurrence in *Nobelman*, in which he observed that Congress's intent in enacting § 1322 was to encourage the flow of capital into the home lending market. *In re Smart*, 214 B.R. at 68. By using the mortgage date, these courts reason, lenders can be confident that their loan will not be subject to modification if a borrow vacates the property on the eve of bankruptcy.

Finally, at least one court has adopted a third approach:  a hybrid of the first two, evaluating the circumstances as of the petition date and evaluating the underlying mortgage. *In re Baker*, 398 B.R. 198 (Bankr. N.D. Ohio 2008). Like the first line of cases, the *In re Baker* court found that the use of the word "is" in the statute clearly pointed to the present tense;

however, the court found that the inclusion of the words "security interest" compelled it to also give weight to the mortgage instrument securing the property. *Id.* at 203. Although, as stated above, this is an issue of first impression for this court, because U.S. Bank cannot prevail under any of these tests the court need not adopt one today.

C.

There is no material fact outstanding as to the debtor's residence as of the petition date. In support of its contention that the condominium was the debtor's principal residence as of the petition date, U.S. Bank offers a Combined Declaration of Use and Incontestability filed by La Femme DC, Inc. with the United States Patent and Trademark Office. The debtor is the sole shareholder in La Femme DC. In La Femme's Combined Declaration, it lists the condominium as its proposed address. La Femme filed the Combined Declaration on the same date the debtor filed her chapter 13 petition. In her motion for summary judgment, the debtor presents her affidavit, a moving company receipt, and lease, all evidencing her pre-petition departure from the condominium.

U.S. Bank's evidence here is insufficient to provide even a reasonable inference that the debtor lived in the condominium as of the petition date. La Femme DC is an entity separate and apart from the debtor. That the debtor is the sole shareholder

6

and president of La Femme does not show that there is a material issue in dispute as to the debtor's residence.  The parties have had ample time to conduct discovery on this issue.  The debtor has come forward with an affidavit, moving bill, and lease.  The mere fact that La Femme filed a Combined Declaration listing the condominium as its proposed address is not enough to show any material fact in dispute regarding the debtor's residence on the petition date.

D.

U.S. Bank cannot prevail under the mortgage date test, either.  As stated above, courts that hold the mortgage date as the relevant time for assessing whether a property is a principal residence rely on the legislative history underlying § 1322.  This legislative history leads to the conclusion that Congress chose to treat favorably principal residence lenders in order to encourage the flow of capital to home buyers.  It follows, these courts state, that to allow a borrower to vacate his home on the eve of bankruptcy and defeat § 1322's anti-modification provision would be contrary to the spirit of the provision.  In *In re Smart*, the mortgage provided that the mortgagee could declare all sums due and payable upon the debtors' failure to continue to occupy the property as their principal residence.  214 B.R. at 64-65.  The mortgage in *In re Smart* contemplated, therefore, that the mortgagee could insist that the debtors continue to occupy

the property as their principal residence throughout the life of the mortgage. The underwriting of such a home mortgage proceeds on the premise that, without the mortgagee's consent, the property can only be used as the debtor's principal residence, and that the mortgagee is not taking a mortgage in property that can at a later date, and without the mortgagee's permission, cease to be the debtor's principal residence. That is the home lending market that Congress intended to protect. To permit modification of such a mortgage would defeat the purpose of the statute by depriving the mortgagee of the benefit of its bargain. This rationale, however, does not hold true in this case.

Here, the deed of trust contains a provision that only required the debtor to occupy the property as her principal residence for one year. When the bank inserted this provision, it limited its anti-modification protection to, at most, one year (and arguably was not entitled to anti-modification protection at all). Its mortgage was at the outset a mortgage in the debtor's principal residence for one year and a mortgage during the remainder of the mortgage term in property that permissibly could cease to be the debtor's principal residence. Consequently, even if testing § 1322(b)(2) as of the origination date were to control, the mortgage here had, as of the origination date, a temporal component to it that limited the duration of its being a mortgage secured by the debtor's principal residence.

Document    Page 9 of 10

The bank cannot prevail by arguing that as of the origination date the mortgage was only a mortgage in the principal residence of the debtor, and thus under the mortgage date test § 1322(b)(2) applies. The focus must be on the grant in the mortgage instrument. *In re Scarborough*, 461 F.3d 406, 412 (3d Cir. 2006); *In re Ferandos*, 402 F.3d 147, 155 n.4 (3d Cir. 2005). If a mortgage instrument includes language that "is effective to grant an interest in [collateral other than the debtor's principal residence], the mortgagee is at its peril in not deleting it." *In re Fernandos*, 402 F.3d at 155. Here, the mortgage instrument granted a security interest in property that after one year was not required to be occupied as the debtor's principal residence, and accordingly the mortgage instrument was not limited to being a security interest in the debtor's principal residence. Section 1322(b)(2) does not protect the mortgage from modification.

If I ruled differently, a mortgagee would be entitled to § 1322(b)(2) protection if the real property that is its collateral was the debtor's principal residence only on Day 1 of the loan, but the mortgage instrument contemplated that on Day 2 the debtor would utilize the loan proceeds to convert the property to a commercial use and cease residing in the property. That cannot have been the type of lending that Congress intended to protect.

E.

The same holds true for the hybrid test. Courts employing the hybrid test look at both where the debtor was residing at the petition date and the language of the underlying mortgage instrument. For the reasons stated above, there is no material issue outstanding as to the debtor's residence as of the petition date: she was not living in the condominium. Second, by only requiring the debtor to occupy the condominium for one year, U.S. Bank limited its § 1322(b)(2) protection under the hybrid test to that period. U.S. Bank cannot now come before the court and demand more than that for which it bargained—namely, anti-modification protection for only one year.

IV

For these reasons, it is

ORDERED that the debtor's motion for summary judgment is GRANTED and U.S. Bank's motion for summary judgment is DENIED. It is further

ORDERED that the debtor is entitled to bifurcate the claim of U.S. Bank pursuant to 11 U.S.C. § 506(a) for purposes of the treatment of that claim under a plan, and that 11 U.S.C. § 1322(b)(2) does not apply to bar such a modification of the claim.

[Signed and dated above.]

Copies to: Debtor; Debtor's attorney; Chapter 13 Trustee; Renee Dyson, Esq.